UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NATIONSTAR MORTGAGE, LLC,
    *Plaintiff*,

v.

AHMED A. DADI,
    *Defendant*.

No. 3:17-cv-165 (MPS)

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Nationstar Mortgage, LLC ("Nationstar") has filed a motion for summary judgment as to foreclosure liability against Defendant Ahmed A. Dadi ("Dadi"). As detailed below, because there is no genuine dispute as to whether (1) Nationstar is the holder of the mortgage and note; (2) Dadi is in default for failure to make property tax payments; and (3) Nationstar has satisfied the conditions precedent to foreclosure, Nationstar's motion for summary judgment as to liability is GRANTED.

**II.    FACTUAL BACKGROUND**

The following facts are taken from Nationstar's Local Rule 56(a)(1) Statement. Because Dadi did not file a Statement of Facts in Opposition to Summary Judgment pursuant to Local Rule 56(a)(2), the material facts set forth in Nationstar's Local Rule 56(a)(1) statement and supported by the evidence will be deemed admitted. L.R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule...."); *see also Burke v. Town of East Hartford*, No. 14-CV-662 (JCH), 2016 WL 8709993, at *1 n.3 (D. Conn. Mar. 4, 2016) ("[Plaintiff] failed to file the requisite Local Rule 56(a)(2)

1

Statement among his papers opposing the defendants' Motion. By operation of Local Rule 56(a)(1), this failure has the effect of 'deem[ing] admitted' 'all material facts set forth in [the moving party's Local Rule 56(a)(1) Statement] and supported by the evidence.'").

On or about July 31, 2009, Dadi executed an Adjustable Rate Note in favor of Webster Bank (the "Note"). ECF No. 87 ("L.R. 56(a)(1) Statement") ¶ 1. To secure his obligations under the Note and the associated Loan Agreement, Dadi granted Webster Bank an Adjustable Rate Reverse Mortgage ("Reverse Mortgage") on property located at 269 Mountain Road, West Hartford, Connecticut (the "Property"). *Id.* at ¶ 2. Nationstar is the holder and owner of the Note, and was in possession of the Note prior to the commencement of this foreclosure action. *Id.* at ¶ 3. On January 7, 2013, the Reverse Mortgage was assigned to Nationstar by an assignment of mortgage recorded in the West Hartford land records in Book 4742 at Page 46. *Id.* at ¶ 4.

Under the terms of the Reverse Mortgage and additional documents executed at the mortgage closing, Dadi is responsible for payment of property taxes and hazard insurance premiums on the Property. *Id.* at ¶ 5. Dadi defaulted on September 9, 2010, for failing to perform his obligations under the Reverse Mortgage, namely for failing to timely pay property taxes. *Id.* at ¶ 6. Since September 2010, Nationstar and prior holders of Mr. Dadi's Note and Reverse Mortgage have advanced payments for property taxes and hazard insurance premiums, with an outstanding balance of $95,037.07. *Id.* at 2 ¶ 7; ECF No. 86-2 at ¶ 14.

In light of Dadi's failure to perform his obligations under the Reverse Mortgage, Nationstar requested and received due and payable approval from the U.S. Secretary of Housing and Urban Development (the "Secretary"). L.R. 56(a)(1) Statement at 2 ¶ 8. On July 25, 2014, upon receipt of due and payable approval from the Secretary, Nationstar mailed to Dadi a due

and payable notice via first class mail to the Property address.  *Id.* at 3 ¶ 7.  The Due and Payable Notice notified Dadi of his cure options.  Specifically, it informed Dadi that the default could be cured by (i) repaying the [then] $33,292.91 advanced by Nationstar for property taxes; (ii) paying the balance in full; (iii) selling the Property for the lesser of the debt or 95% of the appraised value with proceeds made payable to Nationstar, even if the debt is greater than the appraised value; or (iv) providing Nationstar with a deed in lieu of foreclosure as long as good marketable title could be conveyed.  *Id.* at 3 ¶ 8.

Dadi has not cured the default.  *Id.* at ¶ 9.  More than thirty days after mailing the due and payable notice, Nationstar commenced the present foreclosure action.  *Id.* at ¶ 10.

## III. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable

inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

IV. **DISCUSSION**

"[A] court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortgage, LLC v. Ford*, 144 Conn. App. 165, 176 (2013). "In order to establish a prime facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." *Id.*; *see also Eastern Savings Bank v. Marcus*, 2015 WL 5472314, at *2 (D. Conn. Sept. 16, 2015) (same); *Santander Bank, N.A. v. Harrison*, 2016 WL 11080369, at *5 (D. Conn. July 1, 2016) (same).

It is undisputed that Nationstar is the owner of the note. *See* L.R. 56(a)(1) Statement ¶¶ 3-4. Nationstar has produced evidence that Dadi defaulted by failing to timely pay property taxes. *Id.* at ¶ 6 (citing the affidavit of a Nationstar Reverse Litigation Manager, ECF No. 86-2 at 5 ¶ 14, and a transaction log showing numerous property tax payments Nationstar was forced to make on Dadi's behalf, ECF No. 86-2 at 76-77); ECF No. 86-2 at 35 (provision of the Reverse Mortgage providing that the "Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner").

In his opposition to Nationstar's motion for summary judgment, Dadi argues that he did not default because, under Paragraph 2.10 of the Loan Agreement, ECF No. 86-2 at 11, if Dadi did not pay his property taxes and hazard insurance premiums, these payments can be charged to his line of credit. ECF No. 90 at 4-5. Thus, Dadi argues, he "cannot be in default as the plaintiff

4

has claimed." *Id.* at 5. Nationstar points out Dadi declined to authorize the payment of Property Charges, including property taxes, from his line of credit. *See* ECF No. 86-2 at 62. But Section 2.10.5 of the Loan Agreement provides that, "[i]f Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16." *Id.* at 12. Section 2.16, in turn, provides that Loan Advances made pursuant to Section 2.10.5 "shall be made from a line of credit under Section 2.6 or 2.7 to the extent possible. If no line of credit sufficient to make the Loan Advance exists, any future monthly payments must be recalculated in accordance with Subsections 2.5.3 or 2.5.4 to create a line of credit sufficient to make the Loan Advances." *Id.* at 12. Thus, it is not clear on the record before the Court whether the failure to pay Property Charges by itself constitutes a default, since the Loan Agreement appears to require the Lender to make payments from the Borrower's line of credit in such circumstances. As Nationstar points out, however, Dadi had no line of credit from which such payments could be made. ECF No. 92 at 3 n.3. The Loan Agreement indicates that the entirety of the "Principal Limit" of the loan—$340,371.00—was apportioned to closing costs, discharging liens on the property (which totaled $312,455.65), and a "servicing fee set aside," leaving no remaining balance for either a line of credit or monthly payments. ECF No. 86-2 at 15. Thus, I need not resolve whether Dadi would have been in default if there had been an available balance from which Nationstar could have made property tax payments under Section 2.10.5 and 2.16, because it is clear that there was neither a line of credit nor future monthly payments from which the taxes could be paid.

Dadi also argues that, under HUD regulations set forth in Mortgagee Letter 2015-11, Dadi had 60 days to make up any missed payments. ECF No. 90 at 5; ECF No. 90-1 at 7. Dadi claims that he was late on several payments by only a "couple of days or a week," and Nationstar

5

should not have considered him to be in default on account of these late payments. ECF No. 90 5-6. Dadi's argument is unavailing. For one, Nationstar does not argue that Dadi is in default because he was late on several payments. Rather, Nationstar has produced evidence that, as of December 11, 2018, even after accounting for the payments Dadi has made, he currently owes Nationstar $95,037.07 for property tax and insurance payments made by Nationstar and prior holders of the Note on his behalf. ECF No. 86-2 at 76-77. Whether he was in default by virtue of being late on several payments is thus not at issue. Moreover, as Nationstar points out, the Mortgagee Letter on which Dadi relies was not issued until April 23, 2015, and the letter specifically provides that "Due and Payable Requests that were approved prior to the publication of this Mortgagee Letter will not be rescinded." ECF No. 90-1 at 1, 3. Here, Nationstar's Due and Payable Request was approved on July 16, 2014. ECF No. 86-2 at 173. Thus, there is no genuine dispute as to whether Dadi defaulted.

Nationstar has also produced evidence showing that all of the conditions precedent to foreclosure, as established by the Note and the Mortgage, have been satisfied. Paragraph 9(b) of the Mortgage provides that the "Lender may require immediate payment in full of all sums secured by this Security Instrument, *upon approval of the Secretary*, if . . . an obligation of the Borrower under this Security Instrument is not performed." ECF No. 86-2 at 36 (emphasis added). Nationstar has pointed to evidence that it sought and obtained such approval from the Secretary. L.R. 56(a)(1) Statement at 2 ¶ 8; ECF No. 86-2 at 171 (due and payable request); *id.* at 173 (notice approving the request effective July 16, 2014). Dadi claims that, to the best of his knowledge, Nationstar did not request or obtain approval from HUD. ECF No. 90 at 2. This statement, made in a memorandum of law and not in a sworn affidavit, is plainly insufficient to raise a genuine dispute of fact in light of the evidence produced by Nationstar.

6

Paragraph 9(d) of the Reverse Mortgage further provides that "Lender shall notify the Secretary and the Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has (30) days after notice to [cure]." ECF No. 86-2 at 36-37. Here, as noted, Nationstar notified the Secretary and gave notice to Dadi date July 25, 2014 informing him of his options to cure his default. *Id.* at 175-76. The present foreclosure action was not initiated until November 2, 2015. ECF No. 86-3 at 1. Thus, all of the conditions precedent to foreclosure appear to have been satisfied, and Dadi points to no evidence to the contrary.

Dadi argues that, for the past two years, Nationstar has charged him an interest rate of 4 to 4.5%, instead of the LIBOR rate of 3% or less. ECF No. 90 at 6. Dadi attaches a table of LIBOR rates showing that the rates for 2017 to 2019—the period to which Dadi apparently refers—ranged from 1.69% to 3.04%. ECF No. 90-4 at 22. As Nationstar points out, Dadi fails to point to any evidence of the interest rate that Nationstar charged him. But in any case, Paragraph 5 of the Note provides that Nationstar may change the interest rate on the first day of each month, and that the rate will be calculated by adding three percentage points to the current LIBOR rate. ECF No. 86-2 at 24.[1] In light of the LIBOR rates provided by Dadi, and the terms of the Note, an interest rate of 4 to 4.5% was permissible.

Dadi also argues that Nationstar has wrongly charged Dadi's line of credit for its legal fees. Dadi again does not provide any evidence to support this claim. But, in any case, Paragraph 20 of the mortgage, titled "Foreclosure Procedure," provides that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20,

---

[1] Similarly, the Mortgage provides that the interest rate will be calculated by adding "a margin" to the LIBOR rate. ECF No. 86-2 at 39.

including, but not limited to, reasonable attorneys' fees and costs of title evidence." ECF No. 86-2 at 39. Moreover, Dadi does not explain how any disagreement as to the amount of any attorneys' fees or the method by which Nationstar may collect them bears on the question of whether Nationstar should prevail as to foreclosure liability.

In sum, because there is no genuine dispute as to whether (1) Nationstar is the holder of the Mortgage and the Note, (2) Dadi has defaulted, and (3) Nationstar satisfied the applicable conditions precedent to foreclosure, Nationstar's motion for summary judgment as to liability is GRANTED.[2]

## V. CONCLUSION

For the reasons set forth above, Nationstar's motion for summary judgment as to liability, ECF No. 86, is GRANTED. Nationstar is directed to file a motion for judgment of foreclosure by sale by April 2, 2020.[3] The motion shall include a proposed order providing: (1) a proposed date for the sale of the Property; (2) a proposed committee for the foreclosure; and (3) a

---

[2] In his opposition to Nationstar's motion for summary judgment, Dadi requests that the Court reinstate and grant his special defense and counter claim against HUD. ECF No. 90 at 7. I dismissed these claims on November 1, 2017. ECF No. 63. Dadi now seeks to revive them, more than two years later. The deadline to file a motion for reconsideration, however, has long passed. In any case, Dadi does not point to any "controlling decision or data that the court overlooked in its initial decision or order." Local Rule 7(c)(1). Dadi claims that he filed a "Special Act of Congress that removed HUD's sovereign immunity and permitted HUD to sue and be sued." ECF No. 90 at 7. Dadi does not cite this previous filing, but he appears to be referring to ECF No. 80. In this document, Dadi argues that the November 1, 2017 dismissal of his cross-claims against HUD "was in error because HUD did not have sovereign immunity in the instant case." ECF No. 80 at 7. In support of his argument, he cites 28 U.S.C. § 2409a(a), which provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." This provision plainly does not apply here, because the substance of the present action is not the "adjudicat[ion] [of] a disputed title to real property." Furthermore, the provision specifically excludes cases where the United States' interest is in the form of a "security interest." Thus, Dadi has failed to provide any persuasive grounds for reconsidering the dismissal of his claims against HUD.

Dadi has also filed a supplement to his opposition to Nationstar's motion for summary judgment, which includes an affidavit listing repairs and upgrades Dadi has performed on the property. ECF No. 93. I have reviewed this supplement and find that it does not bear on any of the legal issues in this case.

[3] Because the United States is a party to this action, it appears that a foreclosure by sale, and not strict foreclosure, is required. *See, e.g.*, *Retained Realty, Inc. v. Urso*, 2018 WL 7813721, at *1 n.4 (Conn. Super. Ct. Dec. 11, 2018) (citing 28 U.S.C. § 2410(c); *City Savings Bank v. Lawler*, 163 Conn. 149, 154 (1972)).

proposed schedule for the committee's activities prior to the sale.


IT IS SO ORDERED.

/s/<br>Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	March 2, 2020